Becker v. Bridges Experience, Inc., 2026 NCBC 66.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

DERRIC BECKER and JOSEPH
FINLEY, individually, and derivatively
on behalf of Bridges Experience, Inc.,

        Plaintiffs,

      v.

BRIDGES EXPERIENCE, INC., f/k/a
CASTLE BRANCH, INC.; BRETT
HALNA DU FRETAY a/k/a BRETT
MARTIN; and WILLIAM JOSEPH
STEWART,

        Defendants,

    and

BRIDGES EXPERIENCE, INC.,

        Nominal Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CVS004823-640

**ORDER AND OPINION ON
PLAINTIFFS' MOTION FOR
LEAVE TO FILE SECOND
AMENDMENT TO COMPLAINT,
BRIDGES EXPERIENCE'S
MOTION TO DISMISS,
DEFENDANTS WILLIAM JOSEPH
STEWART AND BRETT HALNA
DU FRETAY'S MOTION FOR
SUPPLEMENTAL BRIEFING, AND
PLAINTIFFS' MOTION FOR
LEAVE TO FILE THIRD
AMENDED COMPLAINT
[Public][1]**

1.    **THIS MATTER** is before the Court on Plaintiffs' Motion for Extension of Time and for Leave to File Second Amendment to Complaint (Motion to File Second Amended Complaint), (ECF No. 97), Bridges Experience's Motion to Dismiss Plaintiffs' Derivative Claims (Motion to Dismiss), (ECF No. 170), Defendants William Joseph Stewart and Brett Halna du Fretay's Motion for Supplemental Briefing

---

[1] The Court's Order was provisionally filed under seal on 21 July 2026 to permit counsel for the parties to confer and advise the Court whether they contend any matters referenced herein should be sealed. The parties have not requested that the Court consider sealing any portion of the Order. Therefore, the Court now files its Order in its original form on the public record.

(Motion for Supplemental Briefing), (ECF No. 177), and Plaintiffs' Motion for Extension of Time and for Leave to File Third Amended Complaint (Motion to File Third Amended Complaint), (ECF No. 229), (collectively, the Motions).

2. The Court, having considered the Motions and related briefing, the relevant matters of record, and the arguments of counsel at a hearing on the Motions held 11 May 2026, concludes for the reasons stated below that the Motion to Dismiss is **GRANTED in part** and **DENIED in part**, the Motion to File Second Amended Complaint is **DENIED as moot**, the Motion for Supplemental Briefing is **DENIED as moot**, and the Motion to File Third Amended Complaint is **GRANTED in part** and **DENIED in part**.

> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by James C. Adams, Gabrielle E. Supak, and Anna Majestro, for Plaintiff Derric Becker.*
>
> *Reiss & Nutt, PLLC, by W. Cory Reiss and Mackenzie Jo Lintz, for Plaintiff Joseph Finley.*
>
> *Poyner Spruill LLP, by Andrew H. Erteschik, Colin R. McGrath, John Michael Durnovich, and Clare W. Magee, for Defendant and Nominal Defendant Bridges Experience, Inc. f/k/a Castle Branch, Inc.*
>
> *Williams Mullen, by Camden R. Webb, Killian Wyatt, and Julianna Coppage, for Defendant Brett Halna du Fretay a/k/a Brett Martin.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by H. Hunter Bruton, Michael W. Mitchell, and John L. Gibbons, for Defendant William Joseph Stewart.*

Earp, Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

3. On 27 December 2024, Plaintiffs sued Defendants Bridges Experience, Inc. (Bridges Experience) and Brett Halna du Fretay a/k/a Brett Martin (Martin), for

failure to provide notice of dissenter's appraisal rights, judicial dissolution, breach of fiduciary duty, and constructive fraud. (Compl. ¶¶ 69–108, ECF No. 3.) Plaintiffs also requested that the Court impose a constructive trust on certain shares of stock owned by Martin. (Compl. ¶¶ 109–12.)

4.      The same day, Plaintiffs served their first derivative demand (First Derivative Demand) on Defendant Bridges Experience alleging breaches by Martin of the fiduciary duties he owed the company. (*See generally* Ex. K to First Am. Compl. [First Derivative Demand], ECF No. 48.) Specifically, the First Derivative Demand asserted that Martin, as a director and officer of the company, misused corporate funds and defrauded the company and its shareholders when it came to a "make whole" payment Martin received from the sale of the parties' business. (First Derivative Demand 3.)

5.      On 1 May 2025, the Court issued a Case Management Order (CMO) setting the deadline to amend pleadings and/or add parties as 30 June 2025. (Case Management Order § IV(B) ¶ 4, ECF No. 41.)

6.      Thereafter, Plaintiffs filed a First Amended Complaint on 15 May 2025, naming Bridges Experience as a nominal defendant and adding derivative claims on behalf of the company that aligned with the allegations in their First Derivative Demand. (First Am. Compl. ¶¶ 122–42, ECF No. 46.) Plaintiffs also requested that the Court impose a constructive trust on certain shares of stock owned by Martin, and they added William Joseph Stewart (Stewart), president of Bridges Experience, as a defendant. (*See* First Am. Compl. ¶¶ 122–35, 143–46.)

7. The following day, Bridges Experience filed an unopposed motion asking the Court to (1) appoint Mr. Sam Duffort (Mr. Duffort or Special Litigation Committee) to investigate their derivative claims pursuant to Section 55-7-44(f) of the North Carolina General Statutes; and (2) stay Defendants' deadline to answer or otherwise respond to the First Amended Complaint until thirty days after the Special Litigation Committee's determination. (Bridges Experience's Unopposed Mot. Appointment Sam Duffort & Unopposed Mot. Temporary Stay [5/16/2025 Mot.] 1, ECF No. 50.)

8. On 23 June 2025, the Court appointed Mr. Duffort to investigate the derivative claims and to determine by 22 September 2025 whether maintaining those claims would be in the best interest of Bridges Experience. (Order Unopposed Mot. Appointment Sam Duffort & Unopposed Mot. Temporary Stay [6/23/2025 Order] ¶¶ 6, 8–9, ECF No. 74.) The Court later extended this deadline to 6 October 2025 to allow for the scheduling of interviews that the Special Litigation Committee intended to conduct as part of its investigation. (Order Joint Consent Mot. Extension Time ¶ 4(a), ECF No. 86.)

9. On 1 October 2025, Plaintiffs sent the Special Litigation Committee a letter in which they requested that Mr. Duffort investigate transactions they claimed to have recently discovered. (Oct. 2025 Letter to Thomas Segars, ECF No. 89.1.) Plaintiffs followed this letter with a Second Derivative Demand sent to the company on 7 October 2025. (Oct. 7, 2025 Derivative Demand [Second Derivative Demand], ECF No. 106.1.)

10. On 6 October 2025 (the deadline for the Special Litigation Committee to file its report), Plaintiffs moved for an order requiring the Special Litigation Committee to expand its inquiry to include the allegations in their Second Derivative Demand. The allegations included claims on behalf of Bridges Experience for breach of fiduciary duty involving construction loans for properties on Oak Island and payments made by the company to rent other properties indirectly owned by Martin (Studio ILM and Thin Space). (Mot. Sam Duffort Investigate & Extension Time 1–2, ECF No. 87.)

11. On 20 October 2025, Plaintiffs filed their Motion to File Second Amended Complaint seeking to add claims on behalf of Bridges Experience that aligned with their Second Derivative Demand. (*See generally* Proposed Second Am. Compl., ECF No. 98.1.) With Plaintiffs' consent, Bridges Experience filed a motion requesting Mr. Duffort's appointment to investigate this second set of claims. (Bridges Experience's Consent Mot. Appoint Sam Duffort Investigate Pls.' Second Derivative Demand [10/22/2025 Mot.] 1–2, ECF No. 104.) The Court granted the consent motion on 4 November 2025 and set 19 December 2025 as the deadline for the Special Litigation Committee to file its report. (Order Consent Mot. Appointment Sam Duffort [11/4/2025 Order] ¶¶ 6–7, ECF No. 126.)

12. Thereafter, on 19 December 2025, Mr. Duffort timely filed a 108-page report in which he concluded that pursuing both Plaintiffs' first and second sets of derivative claims would not be in the company's best interest. (Final R. & R. Special Litigation Committee Bridges Experience, Inc. [Duffort Report] 3–4, ECF No. 163.)

13.     Following the filing of the Duffort Report, on 31 December 2025, Bridges Experience filed its Motion to Dismiss requesting that the Court (1) dismiss the derivative claims in Plaintiffs' First Amended Complaint in accordance with N.C.G.S. § 55-7-44(a); and (2) determine that the derivative claims in the proposed Second Amended Complaint were futile. (Br. Supp. Bridges Experience's Mot. Dismiss Pls.' Derivative Claims [Bridges' Br. Supp.] 4, ECF No. 171.)

14.     On 9 January 2026, Defendants Martin and Stewart filed a Motion for Supplemental Briefing in which they requested that the Court order the parties to submit supplemental briefs addressing the impact, if any, the Duffort Report had on Plaintiffs' Motion to File Second Amended Complaint. (Defs. William Joseph Stewart & Brett Halna du Fretay's Mot. Suppl. Briefing [Mot. Suppl. Briefing] 1, ECF No. 177.)

15.     A week later, Plaintiffs filed a motion requesting "limited discovery on whether [Mr.] Duffort's investigation and the Report complies with N.C.G.S. § 55-7-44" or, in the alternative, an extension of thirty days from the denial of Plaintiffs' request for limited discovery to respond to Bridges Experience's Motion to Dismiss (the Discovery Motion). (Pls.' Am. Mot. Extension Time Resp. Mot. Dismiss Conduct Limited Disc. 1, ECF No. 183.)

16.     In response to Plaintiffs' Discovery Motion, the Court suspended Plaintiffs' deadline to respond to the Motion to Dismiss and set a briefing schedule on the Discovery Motion. (Order Pls.' Am. Mot. Extension Time Resp. Mot. Dismiss

Conduct Limited Disc. ¶ 4, ECF No. 184.)  The Discovery Motion was fully briefed. (ECF Nos. 197–98, 207.)

17.  On 6 March 2026, the Court entered an order denying Plaintiffs' request for limited discovery because (1) Plaintiffs failed to satisfy the pleading requirements of Section 55-7-44(d); and (2) the Special Litigation Committee was independent, conducted a reasonable inquiry in good faith, and drew reasonable conclusions from that inquiry.  *Becker v. Bridges Experience, Inc.*, 2026 NCBC LEXIS 64 (N.C. Super. Ct. Mar. 13, 2026) [Order Denying Limited Discovery].[2]  The Court also lifted the stay for briefing the Motion to Dismiss and gave Plaintiffs thirty days to respond.  *Id.* at *21.

18.  Plaintiffs filed their brief in opposition to the Motion to Dismiss on 6 April 2026.  (ECF No. 233.)  On the same day, Plaintiffs filed a motion for leave to file a third amended complaint by which, among other things, they seek to challenge the Court's conclusion that the Special Litigation Committee acted in good faith and conducted a reasonable inquiry.  (Pls.' Mot. Extension Time & Leave File Third Am. Compl. ¶ 8, ECF No. 229.)

19.  Bridges Experience filed its reply in support of its Motion to Dismiss on 15 April 2026.  (ECF No. 242.)

20.  Thereafter, on 27 April 2026, Defendants filed responses in opposition to the Motion to File Third Amended Complaint.  (ECF Nos. 251, 255.)  Plaintiffs filed their reply on 7 May 2026.  (ECF No. 258.)

---

[2] The order was provisionally filed under seal on 6 March 2026 and filed publicly on 13 March 2026.

21.    The Court held a hearing on the Motions on 11 May 2026.  All parties were present through counsel and were given an opportunity to be heard.

22.    The Motions are now ripe for disposition.

## II.    ANALYSIS

### A.    Motion to Dismiss

23.    Section 55-7-44 of the North Carolina General Statutes provides for the investigation and mandatory dismissal of derivative claims if it is determined that maintaining them would not be in the company's best interest.  *See generally* N.C.G.S. § 55-7-44.  The statute states in pertinent part:

> (a) The court *shall* dismiss a derivative proceeding on motion of the corporation if a determination is made, whether before or after the commencement of the derivative proceeding, by one of the groups specified in subsection (b) of this section in good faith, after conducting a reasonable inquiry upon which its conclusions are based, that the maintenance of the derivative proceeding is not in the best interest of the corporation.[3]

N.C.G.S. § 55-7-44(a) (emphasis added).[4]

---

[3] The Special Litigation Committee in this case was appointed under Section 55-7-44(b)(3), which states:

> (b) The inquiry and determination in subsection (a) of this section shall be made . . .
>
>> (3) Upon motion by the corporation, by a panel of one or more individuals appointed by the court.

N.C.G.S. § 55-7-44(b)(3).

[4] After Mr. Duffort was appointed in this case, (*see* 6/23/2025 Order ¶ 8), the Governor signed 2025 Session Law 33, amending N.C.G.S. § 55-7-44 effective 1 October 2025.  2025 N.C. Sess. Laws 33.   The amendment deleted the express requirement that a Court-appointed investigative panel be independent.  *Id.* (changing "one or more independent persons" to "one or more individuals").  Because independence is a factor when evaluating good faith, *Swenson v. Thibaut,* 39 N.C. App. 77, 108 (1978) (noting the "importance of independent judgment by directors as being crucial to the good faith question" (emphasis omitted)), and because the

24. Prior to his appointment, the Court twice addressed Mr. Duffort's independence. The Court observed that Plaintiffs did not oppose his first appointment and consented to his second appointment. It concluded that Mr. Duffort was, in fact, independent. (*See* 6/23/2025 Order ¶¶ 3, 6; 11/4/2025 Order ¶¶ 3, 5.) Further, in its Order Denying Limited Discovery, entered after the Duffort Report was filed, the Court again concluded that there was nothing to indicate that Mr. Duffort lacked independence. *Becker*, 2026 NCBC LEXIS 64, at *20.

25. In addition, as discussed in the Order Denying Limited Discovery, the Court concluded that Mr. Duffort's inquiry was reasonable, and his conclusions based on that inquiry were made in good faith. *Id.* at *14–20. Therefore, dismissal of the derivative claims in the First Amended Complaint, the operative pleading, is mandated by statute. *See JT Russell & Sons, Inc. v. Russell*, 2025 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 4, 2025) ("Factors to consider in deciding [a motion pursuant to N.C.G.S. § 55-7-44] include whether the panel is independent, whether it conducted a reasonable inquiry, and whether it made its decision in good faith." (citations omitted)).

26. The Court rejects Plaintiffs' attempt to relitigate the requirements of Section 55-7-44, both in their opposition to Bridges Experience's Motion to Dismiss

---

amended statute still requires the Court to determine whether the Special Litigation Committee acted in good faith, the Court continues to review for independence.

The amendment also added the following italicized language: "[t]he court shall dismiss a derivative proceeding on motion of the corporation if *a determination is made, whether before or after the commencement of the derivative proceeding, by* one of the groups specified in subsection (b)[.]" N.C.G.S. § 55-7-44(a). No party argues that the Motion to Dismiss in this case is untimely.

and in support of their Motion to File Third Amended Complaint. As explained in the Order Denying Limited Discovery, the Court has already decided that the Special Litigation Committee met those requirements, and as discussed more fully below, Plaintiffs have neither moved, nor presented proper grounds, for reconsideration of that decision. *See W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 99, at \*8 (N.C. Super. Ct. Oct. 19, 2017) ("Reconsideration by re-argument is not proper under Rule 54." (quoting *Brunson v. N.C. Dep't of Soc. Servs.*, No. 5:09-CT-3063-FL, 2011 U.S. Dist. LEXIS 20469, at \*7 (E.D.N.C. Feb. 28, 2011))).

27. Accordingly, the Motion to Dismiss shall be **GRANTED** with respect to the derivative claims in Plaintiffs' First Amended Complaint,[5] and those claims shall be **DISMISSED** with prejudice.[6]

### B. Plaintiffs' Motions to Amend the Complaint

28. Plaintiffs no longer wish to pursue their Motion to File Second Amended Complaint. (*See* Pls.' Reply Br. Supp. Mot. Extension Time & Leave File Third Am. Compl. [Pls.' Reply] 1 n.1, ECF No. 258 ("[T]he Court need not consider whether to allow Plaintiffs to file the [proposed Second Amended Complaint] because the present Amendment Motion moots Plaintiffs' prior [Motion to File Second Amended

---

[5] To the extent the First Amended Complaint seeks a constructive trust to remedy one or more of the attempted derivative claims, the Motion to Dismiss is likewise **GRANTED**. This determination does not affect Plaintiffs' ability to seek a constructive trust, if otherwise appropriate, with respect to their direct claims.

[6] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).

Complaint.]").)  Accordingly, the Motion to File Second Amended Complaint is **DENIED as moot**.[7]

29.   As was true of the Motion to File Second Amended Complaint, in the Motion to File Third Amended Complaint Plaintiffs seek to add derivative claims for: (1) breach of fiduciary duty and constructive fraud against Martin regarding Thin Space; (2) breach of fiduciary duty and constructive fraud against Martin and Stewart regarding the Oak Island Transactions; and (3) breach of fiduciary duty and constructive fraud against Martin and Stewart regarding Studio ILM.  These new derivative claims were the subject of Mr. Duffort's second investigation.  Plaintiffs also seek to add allegations to both the original and the new derivative claims to support their continued assertion that Mr. Duffort was not independent, did not conduct a reasonable inquiry, and failed to act in good faith.  (*See generally* Proposed Third Am. Compl., ECF No. 231.1.)  A proposed amendment to the Fourth Cause of Action, a derivative claim against Martin and Stewart for waste and misuse of company assets, alleges that Martin's salary was excessive, an allegation previously investigated by Mr. Duffort.  (Proposed Third Am. Compl. ¶¶ 284–85.)

30.   In addition to changes to the derivative claims, the Motion to File Third Amended Complaint also seeks to add new direct claims against Martin and Stewart for (1) fraud and (2) breach of fiduciary duty regarding an allegedly improper

---

[7] The individual Defendants filed their Motion for Supplemental Briefing after the Duffort Report was filed, arguing that the Court should permit the parties to submit supplemental briefs on the impact, if any, the Duffort Report had on the Motion to File Second Amended Complaint.  Given that the Motion to File Second Amended Complaint was **DENIED as moot**, Defendants' Motion for Supplemental Briefing shall also be **DENIED as moot**.

shareholder distribution. The latter claim includes allegations that Bridges Experience violated N.C.G.S. § 55-6-40. (Proposed Third Am. Compl. ¶¶ 303–24, 372–83.) The direct claims in the proposed Third Amended Complaint are nearly identical in form and substance to those presented in the proposed Second Amended Complaint filed with the Court on 20 October 2025.

31. The parties do not agree on the standard that governs Plaintiffs' Motion to File Third Amended Complaint. Defendants contend that because the proposed amendment comes well after the deadline to amend provided in the CMO, Business Court Rule (BCR) 9.4 requires Plaintiffs first to show good cause to modify that deadline before proceeding to Rule 15 of the North Carolina Rules of Civil Procedure. (Defs. William Joseph Stewart & Brett Halna du Fretay's Resp. Opp'n Pls.' Mot. Extension Time & Leave File Third Am. Compl. [Defs.' Opp'n] 5–9, ECF No. 251; Bridges Experience's Resp. Pls.' Mot. Extension Time & Leave File Third Am. Compl. [Bridges Opp'n] 7–8, ECF No. 255.) Plaintiffs respond that the good cause requirement is met for the same reasons the proposed amendment complies with Rule 15. (Pls.' Reply 11–14.)

32. The Court agrees with Defendants that to amend now, Plaintiffs must both (1) show good cause to modify the CMO deadline and (2) satisfy the requirements of Rule 15. "[T]he touchstone of [the] good cause requirement is diligence." *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020) (citation modified). In this instance Plaintiffs have satisfied the Court that they have been diligent and that good cause exists in these limited circumstances to extend the deadline to amend.

33. Turning to Rule 15, it is true, as Plaintiffs argue, that leave to amend a pleading "shall be freely given when justice so requires." N.C. R. Civ. P. 15(a). "There is no more liberal canon in the [R]ules" than "when justice so requires." *Vaughan v. Mashburn*, 371 N.C. 428, 434 (2018) (citing G. Gray Wilson, *North Carolina Civil Procedure* Ch. 15, § 15-3 (3d ed. 2007)). Even so, "the right to amend is not unfettered." *Howard v. IOMAXIS, LLC*, 2023 NCBC LEXIS 159, at *13 (N.C. Super. Ct. Nov. 29, 2023). "Reasons justifying denial of an amendment include: (1) undue delay, (2) bad faith, (3) undue prejudice, (4) futility of amendment, and (5) repeated failure to cure defects by previous amendments." *Window World of St. Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79, at *18 (N.C. Super. Ct. Aug. 10, 2015) (citing *Martin v. Hare*, 78 N.C. App. 358, 361 (1985)).

34. Defendants argue that the motion to amend comes too late, would be unduly prejudicial and, in the case of Plaintiffs' proposed derivative claims, would be futile. (Defs.' Opp'n 9–12, 15–16; Bridges Opp'n 8–14.)

i. The Direct Claims

35. Addressing the two proposed direct claims first, Plaintiffs contend that they put Defendants on notice of these claims in October 2025 with the filing of their Motion to File Second Amended Complaint. Since then, Mr. Duffort has been appointed a second time and completed two investigations. At the parties' request, and to allow for these investigations, the Court extended some deadlines and stayed others. (*See* ECF Nos. 124, 151, 176, 223.) As a result, neither fact nor expert discovery has progressed. In December, once the Duffort Report was completed,

Bridges Experience moved to dismiss the First Amended Complaint, and that motion remains pending. Neither Bridges Experience nor either of the individual Defendants has yet to file an Answer.

36.    "The burden is upon the opposing party to establish that that party would be prejudiced by the amendment." *Mauney v. Morris*, 316 N.C. 67, 72 (1986) (citations omitted); *see also Babb v. Graham*, 190 N.C. App. 463, 484 (2008) ("A party objecting to the filing of an amended pleading has the burden of satisfying the trial court that he would be prejudiced by the granting or denial of a motion to amend." (citation modified)).

37.    Other than the passage of time, Defendants offer little support for their position that they would be unduly prejudiced by adding the direct claims. And, while it is true that Plaintiffs initiated the lawsuit some nineteen months ago with the filing of their original Complaint on 27 December 2024, given the unique procedural posture of this case, Defendants have failed to meet their burden.

38.    Accordingly, the Court concludes that Rule 15's liberal standard for amendment counsels in favor of granting Plaintiffs' motion for leave to add their sixth and ninth claims for relief. The Court shall therefore **GRANT in part** the Motion to File Third Amended Complaint, but only as to the proposed direct claims and the factual allegations concerning those direct claims.

ii. The Derivative Claims

39. As for the proposed new derivative claims that were the basis of Mr. Duffort's second inquiry, (Thin Space, Oak Island Transactions, and Studio ILM), Defendants are correct that the Motion fails on futility grounds for the same reasons that the derivative claims in the First Amended Complaint failed.

40. The standard for futility is essentially the same standard used to decide a motion under Rule 12(b)(6) but "provides the Court liberal discretion to find that an amendment lacks futility." *Simply the Best Movers, LLC v. Marrins' Moving Sys.*, 2016 NCBC LEXIS 28, at *5–6 (N.C. Super. Ct. Apr. 6, 2016) (citation omitted). In short, "a motion to amend is not futile when 'the allegations of the [amendment], treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not.' " *IOMAXIS*, 2023 NCBC LEXIS 159, at *15 (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987)). However, "[a] motion for leave to amend is futile and appropriately denied when the 'proposed amendment could not withstand a motion to dismiss for failure to state a claim.' " *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2016 NCBC LEXIS 77, at *6 (N.C. Super. Ct. Oct. 7, 2016) (quoting *Smith v. McRary*, 306 N.C. 664, 671 (1982)).

41. After the proposed Second Amended Complaint was filed, the Special Litigation Committee investigated and reported on the derivative claims that are again alleged in the proposed Third Amended Complaint. Mr. Duffort determined that maintaining those claims would not to be in the best interest of Bridges

Experience. The Court has concluded that Mr. Duffort was independent, conducted a reasonable inquiry from which he drew his conclusions, and that he acted in good faith. *Becker*, 2026 NCBC LEXIS 64, at \*14–20. Accordingly, Section 55-7-44(a) mandates that, should the proposed derivative claims be allowed, they would immediately be dismissed on the corporation's motion.

42. The corporation has stated that it would move to dismiss the claims if they ever came before the Court. (*See* Bridges' Br. Supp. 4 n.4 ("[I]f the Court were to grant Plaintiffs' pending motion to file the proposed derivative claims in the second amended complaint, then in light of the [Duffort Report], Bridges [Experience] will file a new motion to dismiss those claims under N.C.[G.S.] § 55-7-44.").) Consequently, adding the proposed derivative claims would be a futile endeavor.[8]

43. Addressing Plaintiffs' contention that they should be permitted to amend the derivative claims to again challenge Mr. Duffort's independence, the scope of his inquiry, and his good faith, the Court agrees with Defendants that Plaintiffs are essentially asking the Court to reconsider its conclusions in the Order Denying Limited Discovery without first filing the requisite motion. Nevertheless, the Court considers the arguments presented.

---

[8] To the extent Plaintiffs argue that their proposed amendment is a response to the Court's ruling that they failed to plead that Mr. Duffort lacked independence, did not conduct a reasonable investigation, or acted in bad faith, their effort is too late. "Hindsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order." *W4 Farms, Inc.*, 2017 NCBC LEXIS 99, at \*9 (quoting *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001)).

44. Rule 54(b) provides that an interlocutory ruling is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." N.C. R. Civ. P. 54(b).

45. Absent guidance from North Carolina's appellate courts on the standard to apply when considering a motion to reconsider an interlocutory ruling under Rule 54(b), the Court turns to federal case law addressing similarly worded portions of Federal Rule 54(b). *See Ehmann v. Medflow, Inc.*, 2019 NCBC LEXIS 10, at *9 (N.C. Super. Ct. Feb. 6, 2019) ("Without the benefit of North Carolina appellate precedent, in considering a motion for reconsideration the Business Court has previously relied on case law addressing Federal Rule of Civil Procedure 54(b)." (collecting cases)).

46. "Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005) (citations omitted). "Such problems rarely arise and the motion to reconsider should be equally rare." *W4 Farms, Inc.*, 2017 NCBC LEXIS 99, at *5 (quoting *DirecTV, Inc. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004)).

47. The burden is on Plaintiffs to satisfy the Court that there are grounds to reconsider its prior ruling. *See, e.g.*, *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 292 (4th Cir. 2021) ("Where a motion for reconsideration is based on purportedly newly

discovered evidence, . . . [t]he moving party bears the burden of demonstrating that the evidence" could not have been discovered previously.).

48.     Here, Plaintiffs contend that there are four categories of evidence that were not available when the Court rendered its earlier order: (1) a February 2025 email chain between Cherie Homa and Tom Segars produced 30 April 2026 (February 2025 Email), (ECF No. 257.1); (2) Plaintiff Finley's projected 2025 K-1 numbers received via email on 1 April 2026, (Aff. Joseph Finley [Finley Aff.] Ex. A, ECF No. 259.1); (3) a social media post and webpage announcing the planned discontinuation of Bridges Experience's business discovered by Plaintiffs on 30 April 2026, (Finley Aff. ¶¶ 8–11); and (4) documents produced by Truist in December 2025, shortly before the Duffort Report was filed, (ECF Nos. 235.25–.26, 235.28).

49.     First, Plaintiffs contend that the February 2025 email chain is evidence that Mr. Duffort was not independent when he conducted the investigation.  The email chain suggests that Bridges Experience hired Ellis & Winters, LLP (Ellis & Winters) to assist it to identify candidates to serve on the Special Litigation Committee weeks before Mr. Duffort was retained and Ellis & Winters was identified as the Special Litigation Committee's legal counsel.  According to Plaintiffs, this evidence contradicts Mr. Duffort's representation that he retained Ellis & Winters to assist him in this matter, (Duffort Report 2), thereby raising an issue of fact regarding Mr. Duffort's independence.[9]

---

[9] Plaintiffs rely on *In re Carvana Co. S'holders Litig.*, C.A. No. 2020-0415-KSJM, 2024 Del. Ch. LEXIS 105 (Del. Ch. Mar. 27, 2024) and *London v. Tyrrell*, No. 3321-CC, 2010 Del. Ch. LEXIS 54 (Del. Ch. Mar. 11, 2010), two unpublished decisions from the Delaware Chancery Court.  In *Carvana*, the court called Plaintiff's contention that the special litigation

50. Bridges Experience responds that there is nothing unusual about a company recommending counsel who is ultimately retained by a Special Litigation Committee charged with investigating derivative claims. During the hearing, the company admitted through counsel that it sought Ellis & Winters' assistance to establish the Special Litigation Committee because of the firm's experience in that area. However, Bridges Experience argues that its limited involvement with Ellis & Winters does not mean that Mr. Duffort could not later retain Ellis & Winters as counsel to the Special Litigation Committee without jeopardizing his independence.

51. In support of its position, Bridges Experience points to the language of the statute, which permits even directors who have been sued to serve on the Special Litigation Committee. *See* N.C.G.S. § 55-7-44(c)(2) ("For purposes of this section, none of the following factors by itself shall cause a director to be considered not independent . . . [t]he naming of the director as a defendant in the derivative proceeding or as a person against whom action is demanded."). If those directors may be considered independent for purposes of the statute, Bridges Experience reasons, there is no basis to question Mr. Duffort's independence.

---

committee's counsel was "hand-picked by management" a "bad argument." 2024 Del. Ch. LEXIS 105, at *22–23. According to that court, "[a]ccepting a recommendation from management alone does not evidence a lack of independence of the [special litigation committee], and that is all that happened here." *Id.* at *23.

In *London*, the Delaware court commented that "[a special litigation committee] member does not have to be unacquainted or uninvolved with fellow directors to be regarded as independent. But [a special litigation committee] member is not independent if he or she is incapable, for any substantial reason, of making a decision with only the best interests of the corporation in mind." 2010 Del. Ch. LEXIS 54, at *39. This Court is not constrained to follow Delaware law, but even if it were, the evidence does not support a conclusion that Mr. Duffort was "incapable . . . of making a decision with only the best interests of the corporation in mind." *Id.*

52.     The Special Litigation Committee referenced three documents, as well as Mr. Duffort's affidavit, to support a conclusion that Mr. Duffort acted independently.  (Aff. Samuel Duffort [Duffort Aff.], ECF No. 73.1; 7 March 2025 Letter Agreement between Bridges Experience and Ellis & Winters [7 March 2025 Letter Agreement], ECF No. 262.1; Independent Panel Agreement, ECF No. 262.2; 6 March 2025 Letter Agreement between Mr. Duffort and Ellis & Winters [6 March 2025 Letter Agreement], ECF No. 288)[10]

53.     The documents establish that (1) Mr. Duffort retained Ellis & Winters as his counsel and (2) although Bridges Experience agreed both to compensate Mr. Duffort for his time and expense and to absorb Ellis & Winters' charges, it also agreed that "only Mr. Duffort [would] be the [f]irm's client in this matter."  (7 March 2025 Letter Agreement 1); *see also* (Independent Panel Agreement ¶ 2 ("Duffort and the Company further understand and agree that Duffort shall conduct his independent panel investigation independently, with no control, direction, instruction, or influence from . . . the Company.").)  Further "Bridges agree[d] that its obligation to pay [Ellis & Winters'] fee [would] not be contingent upon any aspect of Mr. Duffort's investigation or upon the determination that Mr. Duffort ultimately ma[de][.]"  (7 March 2025 Letter Agreement 2.)

---

[10] Mr. Duffort referenced the 6 March 2025 Letter Agreement but objected to its production on attorney-client privilege grounds.  The document was submitted to the Court *in camera* pursuant to the Court's order, (ECF No. 266).  The Court has reviewed the document and determines that the portions quoted are not privileged attorney-client communications. (Order Regarding Engagement Letter, ECF No. 282.)

54. Similarly, the 6 March 2025 Letter Agreement between Mr. Duffort and Ellis & Winters provides: "[d]espite Bridges' payment of the fees, [Ellis & Winters is] engaged solely to represent the panel in its independent investigation of the minority shareholder claims." (6 March 2025 Letter Agreement 1.) It further states:

> Although Bridges will pay our fees associated with this engagement (as explained below) you, and only you, are the Firm's client in this matter. As a consequence, the communications that we have with you are confidential and privileged. Bridges' payment of fees does not entitle it to any privileged communications. This is important to provide you and the Firm with the independence necessary to faithfully discharge our roles in connection with your service as a panel under N.C.[G.S.] § 55-7-44(f). If you have any questions about this or the need to maintain independence in this role, please do not hesitate to discuss them with us.

(6 March 2025 Letter Agreement 2.)

55. Additionally, Mr. Duffort testified that, prior to the Court appointing him, counsel for Plaintiffs questioned Mr. Duffort, with counsel from Ellis & Winters present, about his ability to serve independently. They included questions about Mr. Duffort's relationship with Bridges Experience or any of the other parties. (Duffort Aff. ¶ 5.) Mr. Duffort testified that he truthfully denied the existence of any relationship. (Duffort Aff. ¶ 5.)

56. Given this undisputed evidence, the Court concludes that Plaintiffs' conclusion that Mr. Duffort was unduly influenced by Ellis & Winters is unwarranted. Instead, the evidence supports the conclusion that Mr. Duffort was and is independent.

57. Next, Plaintiffs argue that Mr. Duffort's inquiry was not reasonable in scope or he would have discovered that the Company was failing, as evidenced by the loss reported on Finley's projected 2025 K-1. However, Mr. Duffort was not appointed to determine whether Bridges Experience would show a profit or loss in 2025. Further, Plaintiffs have not explained why the fact that Bridges Experience may have reported a loss for 2025 means Mr. Duffort's investigation was inadequate. Consequently, Plaintiffs fail to meet the burden required for the Court to reconsider its ruling.

58. Similarly, Plaintiffs argue that the Special Litigation Committee's inquiry was not reasonable in scope or it would have uncovered the fact that the company planned to discontinue a portion of its business. Plaintiffs contend that they only recently discovered this information by way of a social media post leading them to the company's webpage, which announces the closing of Bridges Experience's clinical placement solution (Bridges EXP™) business. (Finley Aff. ¶¶ 8–9.) They point to statements in the Duffort Report describing Bridges Experience as a "going concern" and argue that, to the extent Mr. Duffort based his conclusion that maintaining the derivative claims would not be in the company's best interest on his assumption that Bridges Experience intended to continue to operate, his inquiry was not reasonable.

59. In his report Mr. Duffort said: "Following the sale of Castle Branch to DISA, Bridges Experience [the Company] remains a going concern, and the Company's priority is the growth of the Bridges Experience business. Substantial

funds from the DISA transaction were set aside for this specific purpose." (Duffort Report 78.) As for the closing, Bridges Experience, through counsel, has confirmed that the information on which Plaintiffs rely pertains only to the Company's "clinical placement solution," Bridges EXP™, and not to the Company generally. (Ex. B – May 8, 2026 Letter, ECF No. 261.2.) Thus, this newly discovered information does not provide a sufficient basis for reconsideration of the Court's earlier ruling.

60. Finally, Plaintiffs rely on a set of documents that they received in mid-December from Truist Bank. Having received the documents on the eve of the Duffort Report, Plaintiffs argue that they lacked sufficient time to review them and determine their relevance to the Special Litigation Committee's work before it issued its report. However, Plaintiffs do not explain why, after receiving these documents, they did not promptly bring the matter to the Court's attention and request an extension of time to determine the significance of this information. "Rule 54(b) motions should not be used to raise new arguments or evidence that could have been raised previously." *Wade v. JMJ Enters., LLC,* No. 1:21CV506, 2025 U.S. Dist. LEXIS 168576, at *6 (M.D.N.C. Aug. 29, 2025) (citation modified)). In addition, Plaintiffs fail to present evidence to support a conclusion that Mr. Duffort lacked access to this information before completing his report or that he believes the information would have influenced the outcome.

61. In short, Plaintiffs present no basis for the Court to reconsider its ruling that Mr. Duffort is independent, conducted a reasonable investigation, and acted in good faith. The fact that Plaintiffs disagree about how the inquiry was conducted and

how it turned out is not enough to satisfy their burden. "It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it." *W4 Farms, Inc.,* 2017 NCBC LEXIS 99, at \*12 (quoting *Potter*, 199 F.R.D. at 553). Accordingly, to the extent Plaintiffs' motion is one for reconsideration, it shall be **DENIED**.

62. Even if the proposed new derivative claims were not futile, they come too late. This matter has been pending since 27 December 2024. The complaint has already been amended once. A second motion to amend was filed, and then mooted, by this one. The pending motion is Plaintiffs' fourth attempt at a complaint.

63. Meanwhile, Plaintiffs consented to the appointment of Mr. Duffort to investigate the derivative claims in the First Amended Complaint and then consented to his investigation of the derivative claims in the proposed Second Amended Complaint. The Court extended some deadlines and stayed others to allow this process to occur. Plaintiffs then waited more than three months after the Duffort Report was filed to pursue their latest set of amendments.

64. In addition, the individual Defendants argue persuasively that financial information regarding the Oak Island Transactions, Thin Space, and Studio ILM was available to Plaintiffs well before they initiated this action. (Defs. Brett Halna du Fretay and William Joseph Stewart's Resp. Opp'n Pls.' Mot. Extension Time & Leave File Second Am. Compl. 12–16, ECF No. 129.)

65. The Court concludes that, even if the proposed derivative claims were not futile, unlike Plaintiffs' motion with respect to their direct claims, Plaintiffs have waited too long, and the case has progressed too far, to address the derivative claims a third time. *See Draughon v. Harnett Cnty. Bd. of Educ.*, 166 N.C. App. 464, 467 (2004) ("In deciding if there was undue delay, the trial court may consider the relative timing of the proposed amendment in relation to the progress of the lawsuit." (citation omitted)); *see also Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 679 (2013) (same).

66. Accordingly, the Motion to File Third Amended Complaint shall be **DENIED** as to the derivative claims.

## III.   CONCLUSION

67. **WHEREFORE**, the Court, in its discretion, **ORDERS** as follows:

a.    The Court **GRANTS in part** the Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiffs' derivative claims in the First Amended Complaint, including Plaintiffs' request for a constructive trust as to those claims. The Court **DENIES** the Motion to Dismiss to the extent it seeks dismissal of any other claim or remedy.

b.    The Court **DENIES as moot** the Motion to File Second Amended Complaint.

c.    The Court **DENIES as moot** the individual Defendants' Motion for Supplemental Briefing.

d.    The Court **GRANTS in part** the Motion to File Third Amended Complaint to the extent it seeks to add direct claims but **DENIES** the Motion to File Third Amended Complaint to the extent it seeks to add

derivative claims, a new paragraph 30, and facts and relief related only to derivative claims.

e. Plaintiffs may file their Amended Complaint, in form and substance consistent with this Order and Opinion, on or before 31 July 2026.

f. All stays in this matter are lifted. The parties shall confer and submit a proposed Amended Case Management Order for the Court's consideration no later than 31 July 2026.

**SO ORDERED**, this the 23rd day of July, 2026.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases